# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 24-cr-116 (JEB) |
| v. | 18 U.S.C. § 1361 |
| THEODORE MIDDENDORF, | |
| Defendant. | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Theodore Middendorf, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. In December 2020, Theodore Middendorf and Justin LaGesse communicated by Facebook to make plans to travel to Washington, D.C. to protest the results of the 2020 presidential election. As part of their planning, Middendorf and LaGesse had an associate create shirts with "FUCK ANFITA" written on the front.

9. By January 6, 2021, Middendorf and LaGesse arrived in Washington, D.C. as planned. Justin LaGesse wore a camouflaged jacket, the aforementioned shirt, a blue baseball cap,

and an American flag styled neck gaiter. Middendorf and LaGesse also carried an American flag and Gadsden flag with them. Both flags were attached to flagpoles.

10. At approximately 2:51 p.m., LaGesse entered the U.S. Capitol by climbing through a broken window next to the Senate Wing Door. LaGesse then turned around and helped Middendorf through the window. Once inside, the pair moved towards the middle of the Senate Wing Door lobby area and waved their flags while chanting "U.S.A." with a crowd of rioters.

11. After a few spending a few minutes in the lobby, Middendorf and LaGesse continued south through the Crypt and by the House Wing Door. At that location, they walked by several police officers before walking into the Hall of Columns. In the hall, there was a larger group of police officers shepherding rioters out of the Capitol. Middendorf and LaGesse paused for a few moments in the hall before exiting the Capitol at approximately 3:02 p.m.

12. By approximately 4:09 p.m., Middendorf and LaGesse had moved to the north side of the Capitol where a large group of rioters were attempting to breach the building through the North Door. Police officers, however, defended the door and blocked the rioters' entry. As the officers held back the rioters, Middendorf and LaGesse approached the nearby exterior window of room S-121 and struck the window with the bases of their flagpoles several times. Although the window appeared to be previously damaged, Middendorf and LaGesse's strikes caused additional damage to the window in several places. After damaging the window of room S-121, Middendorf walked to another window nearby and struck it with his flagpole. The strike, however, did not cause damage to the window.

13. After the riot, the Architect of the Capitol determined that the total cost of the damage to the window was $41,315.25. The parties agree that this amount is a reasonable estimate

of the loss and that the reasonably foreseeable pecuniary harm includes the actions of Middendorf as well as the other rioters who contributed to the damage.

## *Elements of the Offense*

14. The parties agree that destruction of government property, in violation of 18 U.S.C. § 1361, requires the following elements:

   a. First, the defendant injured, damaged, or destroyed property.

   b. Second, the defendant did so willfully.

   c. Third, the property involved was property of the United States, or of any department or agency thereof; however, the government does not need to prove that the defendant knew that the property belonged to the United States.

   d. Fourth, the damage to the property in question exceed the sum of $1,000.

## *Defendant's Acknowledgments*

15. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he willfully injured, damaged, or destroyed property of the United States, or of any department or agency thereof, in excess of $1,000.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  /s/ Andrew Haag
ANDREW S. HAAG
Assistant United States Attorney
MA Bar No. 705425
601 D Street, N.W.
Washington, DC 20530
(202) 252-7755
Andrew.Haag@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Theodore Middendorf, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 9-4-24

Theodore Middendorf
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 9/4/24

Molly Madrigal
Attorney for Defendant